**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

UNITED STATES OF AMERICA

v.

LLOYD CHRISTOPHER YOUNG

CRIMINAL CASE NO.

3:16-cr-00006-TCB-RGV

**MAGISTRATE JUDGE'S REPORT, RECOMMENDATION,**
**AND ORDER ON DEFENDANT'S PRETRIAL MOTION**

Defendant Lloyd Christopher Young ("Young") is charged in a two-count indictment with knowingly receiving at least one visual depiction of a minor engaged in sexually explicit conduct, the depiction of which had been shipped and transported in interstate and foreign commerce and produced using a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b), and with knowingly possessing at least one computer storage device containing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  [Doc. 1].[1] Young has moved to suppress statements he made to federal agents during an interview at his residence upon the execution of a search warrant, [Doc. 12], and

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

following an evidentiary hearing on October 31, 2016,[2] the parties filed post-hearing briefs, [Docs. 48 & 49].  For the reasons that follow, it is **RECOMMENDED** that Young's motion to suppress statements, [Doc. 12], be **DENIED**.

## I.  STATEMENT OF FACTS

Federal Bureau of Investigation ("FBI") Special Agent Kevin Orkin ("Agent Orkin"), who was assigned to the crimes against children unit, became involved in a large undercover investigation targeting underground websites, which led to his application for and receipt of a no-knock search warrant for a residence located at 425 Brogdon Road in Fayetteville, Georgia.  (Tr. at 5-6).[3]  A team of about ten FBI agents, including Agent Orkin, executed the search warrant on June 19, 2015, between 7:00 and 8:00 a.m.  (Tr. at 8, 19-20).  The FBI agents, who were armed and

---

[2] See [Doc. 47] for the transcript of the evidentiary hearing.  Citations to the evidentiary hearing transcript hereinafter will be referred to as "(Tr. at ___)."  In addition, the government submitted an exhibit, which will be referred to as "(Gov. Ex. 1)."

[3] Agent Orkin explained that underground websites are "websites that a normal person would not be able to get to through their internet browser," but had to be reached through "specific software" that used "sophisticated technique[s] such as encryption in order to get to the site."  (Tr. at 7-8).  He also explained that "[b]ecause encryption [was] an issue when it c[a]me to being able to retrieve evidence after the fact on computers that [were] encrypted," they typically applied for no-knock warrants "to increase the probability that the subjects [would] not have time to turn off their computer or take some other measure to prevent [law enforcement] from being able to conduct the forensic on their computers."  (Tr. at 8).

dressed with body armor and identifying shirts with either FBI or law enforcement markings, made entry into the residence by breaching the front door with a battering ram while their weapons were drawn, announced their presence, and requested that all occupants, including Young, who had been sleeping on a couch near the front door, come to the entryway area. (Tr. at 8-9, 12, 19-20); see also (Gov. Ex. 1 at 02:25-02:28). After the agents gathered all of the occupants outside of the home,[4] they conducted a protective sweep of the residence for weapons and other individuals for officer safety reasons. (Tr. at 9-10). After the residence was secured, the agents removed their body armor and explained to Young and Young's father that they were there to execute a search warrant. (Tr. at 10, 22).

During the execution of the warrant, Agent Orkin and FBI Special Agent Scott Warren ("Agent Warren") led Young to a separate area and proceeded to interview Young in the driveway to the right of the residence. (Tr. at 10-11, 14, 21).[5] At the outset, Agent Orkin stated to Young, "I think you were out there when I was

---

[4] Young was either "directed or led by another agent to . . . the front yard," but he was not placed in handcuffs. (Tr. at 9, 21).

[5] Agent Orkin explained that they had folding chairs that each of them sat on during the interview, with Young facing toward the road and the agents facing the residence. (Tr. at 11). He further explained that the interview was not conducted inside the residence because it was "not very well lit" and "there was a lot of stuff in the house." (Id.). The entirety of the interview was audio recorded. See (Gov. Ex. 1).

explaining to your dad that we are executing a search warrant at your house," and he then advised Young that he was not under arrest and that they wanted to talk to him about why they were there, but that he did not have to speak with them. (Tr. at 13-14; Gov. Ex. 1 at 00:52-01:10).[6] The agents obtained Young's biographical information, including his educational information and ability to read and write in English, see (Gov. Ex. 1 at 01:17-01:52), and the agents then asked him various questions, and Young proceeded to make certain incriminating statements, (Tr. at 23; Gov. Ex. 1).[7] After the agents asked Young whether he had any questions for them and he indicated that he did not, (Gov. Ex. 1 at 21:43-22:42), the interview concluded after approximately 23 minutes at around 9:35 a.m., and the agents walked Young back over to his family, (Tr. at 13, 18; Gov. Ex. 1).[8] Young was not

---

[6] Agent Orkin testified that Young was free to stand up and walk away or "to do whatever he wanted to outside of interfering with the actual search that was being conducted." (Tr. at 11-12).

[7] In particular, Young provided the agents his password for his computer, (Gov. Ex. 1 at 03:18-03:22), and he also explained that he knew TOR was an underground network and described the types of things an individual could see on that network, (id. at 03:58-09:18), and admitted that the agents would find child pornography on his computer, (id. at 09:41-13:20, 17:29-17:36, 18:20-18:28, 19:09-19:15).

[8] While the agents interviewed Young, their weapons remained holstered, and at no time during the interview did the agents make any promises or threaten Young in any way. (Tr. at 12, 15, 22; Gov. Ex. 1). Young was not handcuffed or restrained, and the agents spoke to him in a conversational tone. (Tr. at 15-16; Gov. Ex. 1). At no time did Young express any feelings of duress, nor did he indicate that he wanted

placed under arrest that day.  (Tr. at 18). Young was indicted on February 10, 2016, [Doc. 1], and he was subsequently arrested pursuant to an arrest warrant on February 29, 2016, [Doc. 9].  Young moves to suppress the statements he made during the interview at his residence upon the execution of the search warrant on June 19, 2015.  [Doc. 12].

## II.  DISCUSSION

Young contends that the statements he made on June 19, 2015, were obtained in violation of Miranda[9] and were not made voluntarily.  [Doc. 12]; see also [Doc. 48].  The government responds that Young's statements are admissible because Miranda warnings were not required since Young was not in custody and that his statements were voluntary.  See [Doc. 49].  The Court will address each of these arguments in turn.

---

to stop the interview or request the presence of an attorney.  (Tr. at 16-17; Gov. Ex. 1).  Young did not appear to be under the influence of alcohol or drugs, and he provided intelligent, coherent, and responsive answers to the agents' questions.  (Tr. at 16; Gov. Ex. 1).  Young did not ask for food, drinks, or to use the restroom, but he would have been "escorted" to the restroom if he had asked, and at no point during the interview did Young indicate that he was suffering from any type of physical or mental health issue.  (Tr. at 17-18; Gov. Ex. 1).

[9] See Miranda v. Arizona, 384 U.S. 436 (1966).

A.   _Miranda_ **Violation Claim**

The ruling in Miranda requires law enforcement officers to apprise a defendant in custody of his Fifth Amendment rights before engaging in interrogation.   See Garcia v. Singletary, 13 F.3d 1487, 1489 (11th Cir. 1994). Interrogation for Miranda purposes "means 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"   United States v. Gomez, 927 F.2d 1530, 1538 (11th Cir. 1991) (alteration in original) (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)).   "Statements made in violation of _Miranda_ are not admissible at trial."   United States v. Barry, 479 F. App'x 297, 299 (11th Cir. 2012) (per curiam) (unpublished) (citation omitted).

Agents Orkin and Warren's questioning of Young on June 19, 2015, clearly constituted interrogation, but the parties dispute whether Young was in custody for Miranda purposes at the time of the interview.   See [Docs. 48 & 49].   A defendant is in custody under Miranda when there has been a "'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"[10]   United

---

[10] Young argues that he was in custody for purposes of Miranda because a reasonable person in his situation would not have felt free to leave, see [Doc. 48 at 7-10], but the "Supreme Court [has] clarified 'that the freedom-of-movement test identifies only a necessary and not a sufficient condition for _Miranda_ custody,'" United States v. Parker, Criminal Case No. 1:10-CR-0176-JEC-JFK, 2010 WL 5313758, at *8 (N.D. Ga. Nov. 18, 2010), adopted by 2010 WL 5313449, at *1 (N.D. Ga. Dec. 17,

States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (citation omitted) (quoting

California v. Beheler, 463 U.S. 1121, 1125 (1983)).  However, "[a]n interviewee's

'status as a suspect, and the coercive environment that exists in virtually every

interview by a police officer of a crime suspect,' does not automatically create a

custodial situation."  United States v. Matcovich, 522 F. App'x 850, 851 (11th Cir.

2013) (per curiam) (unpublished) (quoting United States v. Muegge, 225 F.3d 1267,

1270 (11th Cir. 2000) (per curiam)); see also United States v. Phillips, 812 F.2d 1355,

1360 (11th Cir. 1987) (per curiam) (citation omitted) (quoting Minnesota v. Murphy,

465 U.S. 420, 431 (1984)) ("'[T]he mere fact that an investigation has focused on a

suspect does not trigger the need for *Miranda* warnings in noncustodial settings[.]'").

Instead, whether a suspect is in custody "depends on whether under the totality of

the circumstances, a reasonable man in his position would feel a restraint on his

_____

2010) (quoting Maryland v. Shatzer, 559 U.S. 98, 112 (2010)).  In other words, "'a
free-to-leave inquiry reveals *only* whether the person in question was seized.'  While
'seizure is a necessary prerequisite to *Miranda*, . . . a court must [also] ask whether
. . . a reasonable person would have understood his freedom of action to have been
curtailed *to a degree associated with formal arrest.*'"  United States v. Luca-Encinas, 603
F.3d 876, 881 (11th Cir. 2010) (alterations in original) (citations omitted).  Thus, "the
standards are different," and a person is in custody for Miranda purposes only
where there is a "restraint on freedom of movement to the degree associated with
a formal arrest." United States v. Street, 472 F.3d 1298, 1310 (11th Cir. 2006) (citation
and internal marks omitted); see also United States v. Dix, Criminal Case No.
3:12–cr–00007–TCB–RGV, 2013 WL 610219, at *3 n.15 (N.D. Ga. Jan. 29, 2013),
adopted by 2013 WL 609458, at *1 (N.D. Ga. Feb. 19, 2013) (citation and internal
marks omitted) ("Custody for *Miranda* purposes requires a greater restraint on
freedom than seizure under the Fourth Amendment.").

freedom of movement to such extent that he would not feel free to leave." Barry, 479 F. App'x at 299 (quoting Brown, 441 F.3d at 1347). This test is objective, and "the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." Brown, 441 F.3d at 1347 (citation and internal marks omitted). Thus, "[t]he 'initial step' in determining whether a person was in 'custody' under Miranda 'is to ascertain whether, in light of the objective circumstances of the interrogation' and the totality of all the circumstances, 'a reasonable person would have felt that he . . . was not at liberty to terminate the interrogation and leave.'" Matcovich, 522 F. App'x at 851 (quoting Howes v. Fields, 132 S. Ct. 1181, 1189 (2012)). "[T]he reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." Street, 472 F.3d at 1309 (internal marks omitted) (quoting United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996)).

The Court must "consider several factors in determining custody, 'including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled.'" Barry, 479 F. App'x at 299 (quoting Street, 472 F.3d at 1309). Another relevant factor is the location of the questioning. In particular, "[a]lthough not dispositive, 'courts are much less likely to find the circumstances custodial when the interrogation occurs in

familiar or at least neutral surroundings, such as the suspect's home.'" <u>Matcovich</u>,

522 F. App'x at 851 (quoting <u>Brown</u>, 441 F.3d at 1348)).  Courts should also consider

whether a suspect was "unambiguously advis[ed] . . . that he is free to leave and is

not in custody."  <u>Id.</u> (alterations in original) (citation and internal marks omitted).

"This is a 'powerful factor' that 'generally will lead to the conclusion that the

defendant is *not* in custody absent a finding of restraints that are so extensive that

telling the suspect he was free to leave could not cure the custodial aspect of the

interview.'"  <u>Id.</u> (citation omitted).  Other factors include "the duration of the

questioning, statements made during the interview, the presence of physical

restraints during questioning, and 'the release of the interviewee at the end of the

questioning[.]'"  <u>Id.</u> (quoting <u>Howes</u>, 132 S. Ct. at 1189).[11]

---

[11] Although Young relies on a Ninth Circuit case throughout his brief, as well as cases from various other circuits, in support of his motion to suppress, <u>see</u> [Doc. 48 at 4, 10-11 (citations omitted) (citing <u>United States v. Craighead</u>, 539 F.3d 1073 (9th Cir. 2008))], only decisions of the United States Supreme Court and the Eleventh Circuit are binding on this Court, <u>see</u> <u>Generali v. D'Amico</u>, 766 F.2d 485, 489 (11th Cir. 1985) (citation omitted) ("[A]uthority from one circuit of the United States Court of Appeals is not binding upon another circuit").  Since there is an abundance of Eleventh Circuit authority on the issues presented, there is simply no reason to look to the Ninth Circuit, or the other circuits cited by Young, to rule on the pending motion.  Moreover, "even if *Craighead* was instructional, its facts are clearly distinguishable from the present case in significant respects" as discussed by the government.  <u>United States v. Asher</u>, Criminal Indictment No. 1:09–CR–414–JOF/AJB, 2010 WL 4192883, at *12 (N.D. Ga. Feb. 25, 2010), adopted by 2010 WL 4237579, at *7 (N.D. Ga. Oct. 21, 2010); <u>see also</u> [Doc. 49 at 8-9].

Applying these factors to the instant case, the Court finds that Young was not in custody for purposes of <u>Miranda</u> during the interview of June 19, 2015. After the agents assembled the occupants of the house in a central location and explained to them that they were executing a search warrant, the agents interviewed Young in a separate location from his family while still outside of his home. (Tr. at 10-11, 14, 21). Before interviewing Young in the driveway, Agent Orkin advised Young that the agents were there to execute a warrant, that he was not under arrest, and that they wished to speak with but that he did not have to talk to them. <u>See</u> (Tr. at 13-14; Gov. Ex. 1). Young was not handcuffed, and he was not restrained in any way during the interview. (Tr. at 15-16). The agents spoke in a calm tone of voice, no promises or threats were made, and the interview was brief, lasting only 23 minutes. (Tr. at 12-13, 15-16, 18, 22; Gov. Ex. 1); <u>see also</u> <u>United States v. McDowell</u>, 250 F.3d 1354, 1363 (11th Cir. 2001) (finding suspect not in custody when questioned for four hours); <u>Muegge</u>, 225 F.3d at 1269, 1271 (finding suspect not in custody where interview lasted about two and a half hours). Although the agents initially had their weapons drawn and may have physically touched Young to bring him out of the house, Agents Orkin and Warren's weapons were holstered throughout the interview and there is no evidence that Young was physically restrained or touched during the interview or thereafter. (Tr. at 9, 12, 15, 21-22; Gov. Ex. 1); <u>see also</u> <u>United</u>

States v. Blocker, CRIMINAL ACTION NO. 1:14-cr-228-AT/AJB, 2016 WL 3281018, at *17 (N.D. Ga. Feb. 29, 2016) (citations omitted), adopted by 2016 WL 3259096, at *2 (N.D. Ga. June 14, 2016). Moreover, the agents expressly advised Young at the outset of the interview that he was not under arrest. (Tr. at 13-14; Gov. Ex. 1 at 00:52-01:10). At the conclusion of the interview, the agents led Young back to where his family was standing, and Young was not ultimately arrested until after he was indicted about eight months later. (Tr. at 13, 18; Gov. Ex. 1); see also [Docs. 1 & 9].

Young essentially argues that even though the interview took place in a familiar setting, his residence was nonetheless a police-dominated atmosphere at the time and he "could have reasonably believed that he was in a custodial situation and that he was not free to leave or not to participate in the interview or not to answer questions put forth by the agents," [Doc. 48 at 6, 9],[12] but the fact remains that Young

---

[12] Young asserts that Agent Orkin's testimony that had Young requested to use the restroom, the agents would have escorted him to the restroom and that if there was something he needed, they would have provided it to him suggests "that they would not have allowed [Young] to go or come without them" and demonstrates a reasonable person in his position would not have felt free to move around and that this restriction on his movement around the house is tantamount to a custodial situation. [Doc. 48 at 8]. However, as previously noted, "[n]ot all restraints on freedom of movement amount to custody for purposes of *Miranda*," and the "limitations on [Young's] freedom of movement were tempered by the fact that they would only last for the time it took to search the residence and thus had an expected endpoint, unlike the more open-ended prospect of a formal arrest[.]" United States v. Peck, 17 F. Supp. 3d 1345, 1359, 1363 (N.D. Ga. 2014), adopted at 1348 (citations omitted). Furthermore, "the Eleventh Circuit has found that the requirement that a subject sit while the house was being searched does not amount

"was interviewed in familiar surroundings," <u>United States v. Rogers</u>, Criminal Action No. 1:09–CR–544–TWT–ECS, 2010 WL 2721883, at *2 (N.D. Ga. June 9, 2010), adopted <u>sub nom.</u> by <u>United States v. Rodgers</u>, Criminal File No. 1:09–CR–544–TWT, 2010 WL 2697084, at *1 (N.D. Ga. Jul. 7, 2010) (interview during execution of search warrant held not custodial where defendant was questioned in his driveway and was prohibited from re-entering his home until the search was complete), which strongly militates against a finding that the interrogation was custodial, <u>see</u> <u>Matcovich</u>, 522 F. App'x at 851 (citation omitted).  Furthermore, the credible evidence shows that Young was advised prior to the interview that he was not under arrest and did not have to answer any questions, (Tr. at 13-14; Gov. Ex. 1 at 00:52-01:10), and "[t]his advice has been held to be a 'powerful factor' that 'generally will lead to the conclusion that the defendant [wa]s not in custody,'" <u>Blocker</u>, 2016 WL 3281018, at *17 (last alteration in original) (citation omitted).

The Court is simply not persuaded that the circumstances of Young's interview–where Young was seated comfortably within the driveway area in the familiar surroundings of his own home, free from physical restraints, and where the agents spoke to him in a calm tone of voice with their weapons

---

to custody." <u>Id.</u> at 1363-64 (citation omitted) (collecting cases); <u>see also</u> <u>Asher</u>, 2010 WL 4192883, at *14 (citation omitted) ("[T]he Eleventh Circuit has recognized that escorting a subject around his own home while it is searched does not crease a custodial situation.").

holstered–"present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." Peck, 17 F. Supp. 3d at 1359 (citation omitted). Nor does the mere fact that Young may have been temporarily detained during the execution of the search warrant convert the interview into a full-blown custodial interrogation. Moreover, "[t]here certainly was no restraint on [Young's] freedom of movement of a degree associated with formal arrest," Rogers, 2010 WL 2721883, at *2, which is required to establish custody under Miranda, see Brown, 441 F.3d at 1347 (citations omitted).

In sum, because Young was not subject to custodial interrogation when the agents spoke with him at his home on June 19, 2015, Miranda warnings were not required. The statements were not obtained in violation of Miranda, and they are not due to be suppressed on that basis. See Matcovich, 522 F. App'x at 852 (finding interview during execution of search warrant in defendant's residence was non-custodial where entry by law enforcement created a "'police-dominated atmosphere' with a number of officers handcuffing residents and bringing them to a central location," but where, "'shortly thereafter, the search warrant was announced, the handcuffs were removed,'" and the defendant was told that he was not under arrest); see also United States v. Toumasian, Criminal Case No. 1:10–CR–0291–TCB–JFK–3, 2011 WL 3798223, at *11 (N.D. Ga. July 19, 2011), adopted

by 2011 WL 3738980, at *5 (N.D. Ga. Aug. 22, 2011) (finding defendant was not in custody when six to ten officers used force to breach the door of his residence, had their weapons drawn when entering and securing the residence, had defendant lie face down on the floor where he was handcuffed, and asked defendant questions while he sat upright against a wall while still restrained by handcuffs during the execution of the search).

## B.   <u>Voluntariness</u>

Young also moves to suppress his statements on the ground that the statements were involuntary.  [Doc. 48 at 12-13].  Specifically, Young contends that "the interview was initiated by the agents after forcefully entering [his] home with a battering ram, removing all occupants and requiring [him] to accompany them," that "[w]henever he gave an answer unsatisfactory to the agent, he was pressed with more questions, until the answers the agents sought were elicited," and that "[n]othing the agents or [Young] said or did during this interview process would suggest that [Young] was aware of the purpose of the search warrant, or his right to not participate in the interview[.]"  [<u>Id.</u>].  The government argues that Young's statements were voluntary and that the "recorded interview along with Agent Orkin's testimony demonstrate that [Young] voluntarily participated in the interview."  [Doc. 49 at 11].

Although Young's statements were not taken in violation of <u>Miranda</u>, "the [C]ourt still must determine that any confessions or incriminatory statements made by [Young] were voluntary in order to admit them at trial." <u>United States v. Lazarus</u>, 552 F. App'x 892, 895 (11th Cir. 2014) (per curiam) (unpublished) (citing <u>United States v. Bernal–Benitez</u>, 594 F.3d 1303, 1317–18 (11th Cir. 2010)). Whether a statement was voluntarily given must be examined in light of the totality of the circumstances. <u>United States v. Shepherd</u>, Criminal Case No. 1:11–cr–00058–ODE–RGV–1, 2011 WL 4443440, at *7 (N.D. Ga. Aug. 23, 2011), adopted by 2011 WL 4443435, at *1 (N.D. Ga. Sept. 21, 2011) (citing <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973); <u>Hubbard v. Haley</u>, 317 F.3d 1245, 1252 (11th Cir. 2003)). "This totality of the circumstances test directs the Court ultimately to determine whether a defendant's statement was the product of 'an essentially free and unconstrained choice.'" <u>United States v. Villaverde-Leyva</u>, Criminal Action File No. 1:10-CR-035-RWS/AJB, 2010 WL 5579825, at *11 (N.D. Ga. Dec. 9, 2010), adopted by 2011 WL 121932, at *1 (N.D. Ga. Jan. 14, 2011) (citation omitted). "Among the factors the Court must consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." <u>Id.</u> (citations omitted).

The focus of the voluntariness inquiry is whether Young was coerced by the government into making the statement, so "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986); see also United States v. Cordova, 829 F. Supp. 2d 1342, 1353 (N.D. Ga. 2011), adopted at 1345 (citation omitted). Thus, "[t]hose cases where courts have found confessions to be involuntary 'have contained a substantial element of coercive police conduct.'" United States v. Patterson, Criminal No. 1:06-CR-500-1-TWT, 2007 WL 2331080, at *4 (N.D. Ga. Aug. 10, 2007), adopted at *1 (quoting Colorado v. Connelly, 479 U.S. 157, 164 (1986)). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." United States v. Jones, 32 F.3d 1512, 1517 (11th Cir. 1994) (per curiam) (citation and internal marks omitted); see also Martin v. Wainwright, 770 F.2d 918, 926 (11th Cir. 1985), modified in unrelated part by, 781 F.2d 185 (11th Cir. 1986) (per curiam) (alteration in original) (citation and internal marks omitted) (noting that the test for determining voluntariness of a confession and whether coercion was present is whether the defendant's "will [was] overborne and his capacity for self-determination critically impaired").

16

Young was not threatened or made any promises in exchange for his agreement to speak with the agents. <u>See</u> (Tr. at 12, 15, 22; Gov. Ex. 1). Rather, after being advised that the agents were there to execute a search warrant, that he was not under arrest, and that while they wanted to speak with him, he did not have to talk with them, Young proceeded to speak with the agents, and the audio recording of the interview indicates that he understood the questions being asked of him and responded appropriately in a coherent manner and free from any indication that he felt under duress. (Tr. at 13-14, 16-17; Gov. Ex. 1). Nothing in the record calls into question Young's ability to have understood his situation and the agents' questions, as the recording of the interview and Agent Orkin's testimony establish that Young provided responsive answers during the interview, indicating he understood the questions being asked of him as well as the subject matter of the agents' search warrant, and that despite understanding the situation, he never indicated that he wished to stop the interview or that he did not want to answer a question. (Tr. at 16-17; Gov. Ex. 1). Indeed, the recorded interview demonstrates that Young "remained coherent and capable of understanding what was being said to him, and he provided relevant responses, even disagreeing at times with the interviewing officers on some points." <u>United States v. Martin</u>, No. 1:14–CR–00427–ELR, 2015 WL 4664889, at *14 (N.D. Ga. Aug. 6, 2015) (citation omitted), adopted at *5.

On these facts, the government has shown that, under the totality of the circumstances, Young's statements on June 19, 2015, "were voluntary and the product of a free and deliberate choice, made in the absence of intimidation, coercion, and deception." United States v. Hill, No. CR 114–028, 2014 WL 5410214, at *11 (S.D. Ga. Oct. 23, 2014), adopted at *1.  In short, "[t]here is no credible evidence that [Young] believed he was in physical danger or had no choice but to cooperate with the [agents]," he was not "subjected to an exhaustively long interrogation, physical force, or abusive language," and when the agents "completed execution of the warrant, [Young] was not arrested and was in fact left at the residence." Id. at *11-12.  In fact, Young "does not accuse the [agents] of acting in any way to threaten, coerce, deceive, or injure him," but merely alleges, in essence, "that he was scared and intimidated by the agents [who had used a battering ram to gain entry into his home]," but "[i]t is beyond peradventure . . . that the mere execution of warrant by law enforcement officers is a woefully inadequate basis for suppression in the absence of any threats, use of force, improper inducements, deception, or any other conduct by law enforcement agents to coerce." Id. at *12; see also United States v. Lynn, 547 F. Supp. 2d 1307, 1308, 1310 (S.D. Ga. 2008), adopted at 1308 (citation omitted) (finding defendant's statements were voluntary where although "defendant was clearly shaken by the intrusion into his home" by the

agents' use of a battery ram to force the door open to execute a warrant, "there [was] no evidence of record that he believed that he was in physical danger or that he had no choice but to cooperate with the agents" and "even if [he] had harbored such a subjective belief, his state of mind [was] immaterial without some indication of police misconduct"). "Considering the totality of the circumstances as established by the evidence adduced at the evidentiary hearing, the Court finds that the government has demonstrated by a preponderance of the evidence that [Young's] statements were entirely voluntary." Lynn, 547 F. Supp. 2d at 1311 (citation omitted). Thus, the statements Young made on June 19, 2015, are not due to be suppressed.

## III.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Young's motion to suppress statements, [Doc. 12], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 25th day of January, 2017.

*Russell G. Vineyard*

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

19